**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| TENICKA S. SHANNON, individually and as Administrator of the Estate of Frederick R. Smith Cox, Deceased;<br><br>        Plaintiff,<br><br>vs.<br><br>Deputy MICHAEL SHANE HILL, individually and as agent of the Davidson County Sheriff's Office; and DAVIDSON COUNTY SHERIFF'S OFFICE and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Surety on the Official Sheriff's Bond under N.C.G.S. 162-8,<br><br>        Defendants. | CASE No.: 21-CV-629<br><br><br><br>**COMPLAINT AT LAW**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AT LAW

NOW COMES Plaintiff, The Estate of Frederick R. Smith Cox, by and through its duly appointed administrator, Tenicka S. Shannon, and brings this claim for wrongful death, deprivation of civil rights, and for violations of state law against Defendants Michael Shane Hill, in his individual capacity and as agent for the Davidson County Sheriff's Office; Defendant Davidson County Sheriff's Office; and Travelers Casualty and Surety Company of America, Surety on the Official Sheriff's Bond under N.C.G.S. 162-8. In support of her claims for relief, Plaintiff says as follows:

### Introduction

1. This cause of action arises out of Frederick ("Fred") R. Smith Cox's November 8, 2020 death, occurring at approximately 3:30 p.m., at the Living Water Baptist Church, 1300 Brentwood Street in High Point, North Carolina.

1

## Jurisdiction and Venue

2. This lawsuit asserts claims for relief under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1983, for violation of rights secured and guaranteed to Mr. Cox under the Fourth and Fourteenth Amendments of the United States Constitution, and for violation of certain laws of the State of North Carolina. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983 and pendant and/or supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in Guilford County within the Middle District of North Carolina. Moreover, upon information and belief, all of the parties reside within this Judicial District.

4. Upon information and belief, to the extent the doctrine of sovereign, governmental, qualified or other immunity applies to the claims asserted herein, Defendants, through their respective employers, have waived sovereign or governmental immunity through the purchase of one or more policies of liability insurance pursuant to N.C. Gen. Stat. § 153A-435, by purchasing a bond pursuant to N.C .Gen. Stat. § 162-8, by participating in a local government risk pool pursuant to N.C. Gen. Stat. § 58-23-5, by settling similar claims or actions, by acting maliciously in a manner that shocks the conscience of the Court and by acting intentionally, unlawfully, and/or otherwise.

## The Parties

5. At all times relevant hereto and until the time of his death on November 8, 2020, Plaintiff's decedent Fred Cox was a citizen of the United States and the City of High Point, County of Guilford, state of North Carolina.

6. At all times relevant hereto, including at the time of his death, Fred Cox was 18 years old.

7. Plaintiff Tenicka Shannon is an adult citizen and resides in Guilford County, North Carolina. On March 12, 2021, Ms. Shannon was appointed by the Guilford County Clerk of Superior Court as the administrator of the Estate of Frederick R. Smith Cox ("Decedent" or "Mr. Cox"). A true and correct copy of the Order appointing Ms. Shannon as administrator is attached hereto as Exhibit A.

8. Mr. Cox died intestate on November 8, 2020 and, as such, Plaintiff is the proper personal representative to bring this wrongful death action on behalf of Decedent's Estate.

9. The Davidson County Sheriff's Office ("DCSO") is and was at all times relevant hereto a law enforcement agency in Davidson County, North Carolina organized and existing under the laws and Constitution of the State of North Carolina. Sheriff Richard T. "Richie" Simmons, Jr., was at all relevant times the duly elected Sheriff of Davidson County, winning election in 2018. Pursuant to N.C. Gen. Stat. § 153A-103, the Sheriff has final policymaking authority over personnel matters within the Sheriff's Office.

10. Upon information and belief, Defendant Deputy Michael Shane Hill is and was at all times relevant hereto a citizen of the United States and the State of North Carolina.

11. Defendant Hill was at all times relevant to this action a Sheriff's deputy with the DCSO and was acting under color of state law. He is sued in this action in his individual capacity as to Plaintiff's claims arising under 42 U.S.C. § 1983 and is sued in his individual and official capacity as to Plaintiff's state law claims.

12. On information and belief, Defendant Travelers Casualty and Surety Company of America ("Travelers") is the Surety on the Sheriff's Bond for the Davidson County Sheriff and is a

corporation lawfully permitted to operate in North Carolina with its principal place of business located at One Tower Square, Hartford, CT 06183.

**Factual Allegations**

13. On information and belief, Defendant Michael Shane Hill was hired by the Davidson County Sheriff's Office in January 2019.

14. On information and belief, Defendant Hill was demoted by the Davidson County Sheriff's Office in January 2020 from a position of Sheriff Lieutenant to a position of Sheriff Deputy investigator.

15. On information and belief, Defendant Hill had previously worked for the Kernersville Police Department from 2000 to 2009. Defendant Hill resigned from that position two days after he was suspended by that police department.

16. On November 8, 2020 at approximately 1:00 p.m., Mr. Fred Cox was attending the memorial service of another young man, Jonas Thompson, who had recently been killed in nearby Davidson County. The memorial service was held at Living Water Baptist Church, 1300 Brentwood Street in High Point, North Carolina (hereinafter "the Church").

17. After the service, Mr. Cox was asked to serve as a volunteer pallbearer to assist the Thompson family. Mr. Cox agreed to serve in this capacity and support the Thompson family as they exited the service and went downstairs to the Fellowship Hall in the Church to gather their provided to-go lunch.

18. Defendant Deputy Michael Shane Hill was also in attendance at the memorial service. Upon information and belief, Defendant Hill was in attendance and on duty in an investigative capacity.

4

19. Defendant Hill was in plainclothes at the memorial service, but was on duty and had his service weapon with him.

20. After the service, Defendant Hill went to the Fellowship Hall located in the basement level of the Church to speak with the Thompson family.

21. At the same time that Defendant Hill was speaking to the Thompson family, Mr. Cox was in the Fellowship Hall with the Thompson family and the volunteer pallbearers.

22. After completing his pallbearer duties and gathering his to-go lunch, Mr. Cox went outside to his car, which was parked about 30 feet from a side entrance on the south side of the church.

23. Mr. Cox spoke with a few people outside while sitting in his car with the air conditioning on.

24. Defendant Hill was outside continuing to speak with members of the Thompson family in the same parking lot in which Mr. Cox was seated in his car.

25. Suddenly, gunshots rang out from at least two vehicles that had pulled up to the north side of the Church.

26. Upon hearing the gunshots, those outside the Church, including Mr. Cox, began to run for cover inside the Church.

27. Fred Cox ran for cover from his car, attempting to get inside the Church.

28. On information and belief, the shooting was happening on the north and east side of the Church; Fred Cox and others were trying to find cover on the south side of the Church.

29. Defendant Hill was also on the south side of the Church near Mr. Cox—and opposite the north side of the Church where the shooting was happening.

Case 1:21-cv-00629-WO-JLW   Document 1   Filed 08/11/21   Page 5 of 24

30. Defendant Hill did not give any commands or instructions to the people who were outside the Church when the shooting began and did not aid them in finding cover. Instead, he pulled out his service weapon.

31. Mr. Cox arrived at the Church's south entrance.

32. A mother and her 12-year-old son arrived at the Church's south entrance immediately after Mr. Cox.

33. With one hand, Mr. Cox opened the door just wide enough for one person to enter at a time and with his other hand, ushered the mother and her son through in front of him, under his arm.

34. The son entered the Church first, followed by the mother.

35. Mr. Cox did not have a gun in either hand as the mother and son slipped under his arm and entered the Church.

36. Just after the mother got through the door, Mr. Cox was shot by Defendant Hill.

37. Mr. Cox fell to the ground right inside the door and did not get up.

38. Fred Cox saved the mother and son's lives before he fell, making sure they were safe inside the Church before he tried to enter.

39. Defendant Hill continued to shoot into the side entrance of the Church with his service weapon.

40. At least one bullet grazed the 12-year-old Mr. Cox had attempted to shield from harm by ushering him into the Church.

41. At least one witness inside the Church saw the sparks of bullets hitting the Church's brick walls.

42. Defendant Hill had no information and did not reasonably believe that Mr. Cox had a gun in his possession or fired a weapon during the shooting at the Church.

43. Nevertheless, Defendant Hill shot Fred Cox—on the opposite side of the Church from where the drive-by shooters were located.

44. Immediately after the shooting from the vehicles stopped, Defendant Hill cleared the Church, yelling at individuals in the Church to put their hands up and get down while sweeping his gun left and right across the terrified memorial attendees who had gathered in the Fellowship Hall for shelter from the gunfire.

45. By the time the gunfire ended, Fred Cox had died from his wounds.

46. An autopsy revealed that Mr. Cox had been shot four times by Detective Hill, in the neck, the rear left shoulder, the left upper back, and the left thigh.

47. Mr. Cox's death was ruled a homicide by the Office of the Chief Medical Examiner and in the High Point police department incident report.

48. These gunshots resulted in significant internal injuries including to Mr. Cox's left lung and the upper cervical spine, along with related concussive injury to the spine and brain.

49. The autopsy found that there was no gunshot residue on Mr. Cox's hands when he was killed.

50. The autopsy found that there were no drugs or alcohol in Mr. Cox's system when he was killed.

51. The autopsy found that Mr. Cox had no contributory physical injuries unrelated to the gunshot wounds and no contributory natural diseases when he was killed.

**Increased Fatal Shootings by DCSO Deputies Since Richie Simmons Became Sheriff**

52. Sheriff Richie Simmons was elected Sheriff of Davidson County in November 2018.

7

53. Davidson County Sheriff's deputies have fatally shot and killed eight people since 2014. Six of those eight individuals were shot and killed from 2019 to 2021, under Sheriff Richie Simmons' watch, despite the fact that the violent crime rate decreased by 54% in Davidson County from 2018 to 2019, according to NCSBI crime statistics.

54. Davidson County's violent crime rate was among the 20 lowest for North Carolina counties in 2019, according to NCSBI crime statistics.

55. Nevertheless, fatal shootings by Davidson County Sheriff's deputies have increased dramatically in the years since Sheriff Simmons was elected.

56. Just months before Defendant Hill shot and killed Mr. Cox, Davidson County Sheriff's deputies also shot and killed John Hendrick.

57. Hendrick was a passenger in a stolen vehicle during a police pursuit that lasted a number of hours and spanned across several counties.

58. During the chase, Mr. Hendrick and another passenger in the vehicle called 911 several times to request that deputies back off the pursuit for long enough that the driver would be able to let them out of the vehicle.

59. Deputies disregarded these desperate requests and continued to pursue the vehicle at a close distance.

60. Once the vehicle entered Davidson County, Davidson County Sheriff's deputies joined the pursuit.

61. The deputies performed a PIT maneuver on the vehicle Mr. Hendrick was in to end the pursuit.

62. Despite successfully disabling the vehicle with the PIT maneuver, two Davidson County Sheriff's deputies immediately began shooting into the vehicle.

63. Mr. Hendrick was shot in the forehead and declared dead on the scene.

64. Mr. Hendrick was the only person shot in the encounter.

65. Mr. Hendrick, who had tried to remove himself from the situation multiple times before he was killed, was unarmed and reportedly had his hands in the air when he was shot by Davidson County Sheriff's deputies.

66. Davidson County Sheriff's deputies claim that each of the individuals they have shot and killed since 2019, including Mr. Cox and Mr. Hendrick, were armed and/or a threat to officers.

67. There is no evidence that Mr. Cox was armed or a threat to Defendant Hill when he was shot and killed.

68. DCSO, under Sheriff Simmons, has a pattern, practice, and custom of using excessive and deadly force in situations where less-than-lethal force is appropriate. This pattern, practice, and custom has led to unarmed, innocent people being killed for no reason.

69. On information and belief, DCSO and Sheriff Simmons have not disciplined, reprimanded, or terminated a single Sheriff's deputy who has shot and killed someone on duty.

## Count I – 42 U.S.C. § 1983 – Excessive Force
### *Plaintiff v. Defendant Hill, in his individual capacity*

70. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

71. At all material times, Defendant Hill was an authorized officer, agent, and/or employee of DCSO, and was acting in the course of his employment and under color of state law.

9

72. At all material times, it was the duty of Defendant Hill individually and as officer, agent and/or employee of DCSO to refrain from using unreasonable excessive force against others, including Mr. Fred Cox.

73. On November 8, 2020, in breach of said duty, Defendant Hill used unreasonable and excessive force in violation of the United States Constitution by engaging in the following acts or omissions:

   a. Defendant Hill used a level of force that Defendant knew, or should have known, was excessive when he shot Mr. Fred Cox without proper justification;
   b. Defendant Hill used deadly force despite no amount of force being reasonably warranted by the circumstances facing him;
   c. Defendant Hill used an unreasonable amount of force in relationship to the threat or force posed by Mr. Fred Cox, who was not resisting any lawful arrest or threatening the life or safety of any individual;
   d. Defendant Hill failed to use less dangerous means of restraint; and/or
   e. Defendant Hill failed to follow proper police procedures and adhere to a use of force continuum consistent with that used by law enforcement agencies in North Carolina in violation of N.C. Gen. Stat. § 15A-401(d)(2).

74. At all material times, the aforementioned conduct of Defendant Hill constituted unreasonable excessive force in violation of the United States Constitution.

75. At all material times, it was clearly established, and reasonable officer in Defendant Hill's position would have had notice, that a police officer may not seize an unarmed, non-dangerous suspect by shooting and killing him.

76. The actions of Defendant Hill were objectively unreasonable and were undertaken intentionally with willful indifference to Fred Cox's constitutional rights.

77. The actions of Defendant Hill would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the time that Defendant Hill used such force.

78. The actions of Defendant Hill were undertaken with reckless indifference to the rights of Mr. Fred Cox.

79. As a proximate cause of Defendant Hill's unreasonable and excessive use of force, Mr. Fred Cox experienced injuries, including physical and psychological pain and suffering, and death.

80. As a proximate cause of Defendant Hill's unreasonable and excessive use of force, Mr. Fred Cox's heirs and estate suffered losses, including loss of benefits and future earnings, and incurred medical and funeral bills.

81. As a proximate cause of Defendant Hill's unreasonable and excessive use of force, Mr. Fred Cox's heirs suffered emotional distress and mental anguish, and experienced the loss of Mr. Cox's companionship, love, care, and protection.

82. As a direct and proximate result of the willful, malicious and vicious conduct and unreasonable and excessive force of Defendant Hill described above, Mr. Cox suffered a deprivation of his constitutionally protected rights leading to his death and allowing Plaintiff to recover, on behalf of the Estate of Frederick R. Smith Cox, damages against Defendant, *inter alia*:

     a. Funeral and burial expenses; and
     b. The present monetary value of Decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected net income of Decedent, services, protection, care and assistance of Decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered, and society, companionship, comfort, guidance, kindly offices and advice of Decedent to the persons entitled to the damages recovered.

83. It is specifically alleged that the facts detailed in this complaint demonstrate that Mr. Cox was intentionally seized by Defendant Hill, implicating the Fourth Amendment to the United States Constitution. Alternatively, Mr. Cox was seized when he was struck with

11

Defendant Hill's first bullet, directed toward Mr. Cox intentionally and maliciously by Defendant Hill.

84. It is specifically alleged that qualified immunity does not act to bar this claim as Mr. Cox's rights to be free from Defendant Hill's malicious actions and unreasonable seizure were clearly established at the time of this incident.

WHEREFORE, Plaintiff, Tenicka Shannon, individually and as the personal representative of the estate and heirs of Mr. Frederick R. Smith Cox, respectfully requests that this Court enter judgment against Defendant Hill, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

## Count II – 42 U.S.C. § 1983 – *Monell* Liability
### *Plaintiff v. Defendant Davidson County Sheriff's Office*

85. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

86. North Carolina Gen. Stat. § 153A-103(1) mandates that "Each sheriff and register of deeds elected by the people has the exclusive right to hire, discharge, and supervise the employees in his office."

87. Sheriff Richie Simmons took office in December 2018 after winning election the month before.

88. Simmons, Sheriff of Davidson County, is therefore the final policymaker for DCSO, and his actions as Sheriff constituted policy decisions that had the "stamp of approval" of Defendant DCSO.

89. A North Carolina sheriff is a "person" subject to suit under 42 U.S.C. § 1983.

90. As policymaker for Defendant DCSO, Sheriff Simmons created, promulgated, and maintained policies which deprived Plaintiff and Decedent, Mr. Fred Cox, of their constitutional rights, including but not limited to, their due process rights to be free from unreasonable seizures, use of force, and their rights not to be subjected to improper deprivations of liberty and the pursuit of happiness.

91. The conduct by Defendant Hill described herein constituted excessive and deadly force in violation of the Fourth Amendment United States Constitution, as incorporated through the Fourteenth Amendment.

92. At all material times, Defendant Hill was an authorized officer, agent, and/or employee of Defendant DCSO, and was acting in the course of his employment, within the scope of his authority as a duly-certified law enforcement officer, and under color of state law.

93. On information and belief, Sheriff Simmons hired Defendant Hill to DCSO in January 2019, despite Defendant Hill's previous suspension and resignation from the Kernersville Police Department.

94. Sheriff Simmons, in his official capacity, had final policymaking authority with regard to hiring, retaining, training, and supervising Davidson County Sheriff's deputies as they performed their law enforcement functions on behalf of DCSO.

95. Sheriff Simmons had final policymaking authority with regard to establishing written and unwritten policies and training programs governing the conduct of Davidson County deputies performing policing functions on behalf DCSO.

96. Sheriff Simmons established and/or approved of DCSO's written and unwritten policies and training governing the conduct of Davidson County Sheriff's deputies performing policing functions.

97. At all material times herein, Sheriff Simmons, as final policymaker of DCSO, was acting under color of state law.

98. The unconstitutional actions and/or omissions of Sheriff Simmons, as final policymaker of DCSO, as well as other officers employed by or acting on behalf of DCSO, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the DCSO, which Sheriff Simmons created, promulgated, and maintained, and which he directed, encouraged, allowed, and/or ratified as final policymaker for DCSO:

   a. Using or tolerating the use of excessive and/or unjustified force against citizens;
   b. Creating unnecessary danger and risk of serious harm or death, with deliberate indifference to the safety of citizens;
   c. Allowing the use of dangerous and excessive force as a first resort during the seizure of subjects;
   d. Encouraging deputies to shoot at suspects before using other non-lethal forms of force first;
   e. Encouraging escalation rather than de-escalation when interacting with suspects and innocent citizens alike;
   f. Failing to discipline, reprimand, fire, suspend, train, re-train, or correct officers for whom DCSO receives reports or complaints that the officer is engaging in improper use of force or the violation of constitutional rights of citizens;
   g. Covering-up violations of constitutional rights by failing to properly investigate and/or evaluate officer-involved shootings and by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity;
   h. Hiring officers who were unqualified or known to be inappropriate for law enforcement, including officers who retired from previous law enforcement agencies while being investigated for wrongdoing; and/or
   i. Failing to terminate officers despite knowledge of repeated unconstitutional, unlawful, or improper conduct.

99. Sheriff Simmons, as final policymaker for DCSO, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline DCSO deputies, including Defendant Hill, with deliberate indifference to Plaintiff's and Decedent's constitutional rights, which were thereby violated as described above.

14

100.     Sheriff Simmons, as final policymaker for DCSO, had knowledge of and effectively ratified DCSO's unconstitutional patterns and practices and also had knowledge that the same gave rise to a risk of violations of citizens' federal rights.

101.     Sheriff Simmons, as final policymaker for DCSO, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from DCSO's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

102.     On or prior to November 8, 2020, Sheriff Simmons, as final policymaker for DCSO, with deliberate indifference to the rights of citizens, suspects, and detainees alike, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of North Carolina citizens, including but not limited to allowing Davidson County Sheriff's deputies to use deadly force as a first resort during seizures.

103.     On or prior to November 8, 2020, Defendant Sheriff Simmons, as final policymaker for DCSO, with deliberate indifference to the rights of citizens, suspects, and detainees alike, failed to supervise, terminate, or properly discipline its officers for unconstitutional, unlawful, or otherwise improper conduct, and thereby encouraged Defendant Hill to continue engaging in unlawful acts toward citizens, arrestees, and detainees, including Mr. Cox.

104.     Defendant DCSO, through Sheriff Simmons as final policymaker, failed to properly supervise officers, including without limitation, Defendant Hill, who resigned from other law enforcement agencies following allegations of police misconduct.

105.     Defendant DCSO, through Sheriff Simmons as final policymaker, failed to properly implement policies to govern the conduct of Defendant Hill, despite knowing that Defendant Hill had been previously investigated by the Kernersville Police Department for misconduct.

106.     As such, Defendant DCSO, through Sheriff Simmons as final policymaker, was deliberately indifferent and reckless with respect to the potential violation of constitutional rights.

107.     The unconstitutional policies, practices, and customs defined herein were the moving force behind Mr. Cox's death.

108.     The failure to supervise constituted an official policy of Defendant DCSO and Sheriff Simmons.

109.     The hiring of law enforcement officers who have resigned from other law enforcement departments rather than face investigation for misconduct constituted an official policy of Defendant DCSO and Sheriff Simmons.

110.     Seizing citizens and suspects is a usual and recurring situation which Defendant DCSO's deputies encounter on a regular basis.

111.     As a direct and proximate result of the acts and omissions of Defendant DCSO, through Sheriff Simmons as final policymaker, Mr. Fred Cox experienced a violation of his constitutional rights, including his Fourteenth Amendment rights and his Fourth Amendment rights, which resulted in his death.

112.     As a direct and proximate result of the acts and omissions of Defendant DCSO described herein, Mr. Fred Cox suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

16

113.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

114.     The conduct described in all of the preceding paragraphs amount to wrongful acts and omissions for purposes of N.C. Gen. Stat. § 28A-18-2.

115.     As a direct and proximate result of these wrongful acts and omissions, Mr. Fred Cox's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection and support in an amount to be determined by jury.

116.     The actions described herein were undertaken within the scope of and pursuant to the duties of Sheriff Simmons as final policymaker for DCSO, and recovery on the Sheriff's bond posted on behalf of the Sheriff is therefore proper.

WHEREFORE Plaintiff, Tenicka Shannon, individually and as the personal representative of the estate and heirs of Mr. Frederick R. Smith Cox, respectfully requests that this Court enter judgment against Defendant DCSO, awarding compensatory damages, attorneys' fees and for any further relief this Court deems just.

## Count III – Wrongful Death – Battery
### Plaintiff v. Defendant Hill, individually and in his official capacity

117.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

118.     Defendant Hill, acting under color of state authority as a deputy with DCSO, caused malicious and needless bodily contact with Mr. Fred Cox without his consent that directly

and proximately caused his death. The conduct of Defendant Hill was malicious, corrupt, deliberate, and in bad faith.

119.     The conduct of Defendant Hill constituted a battery, and Defendant Hill is liable for all injuries and damages inflicted on Mr. Fred Cox, including compensatory and punitive damages.

120.     The actions described herein were purportedly undertaken within the scope of and pursuant to the duties of Defendant Hill as a deputy and agent of Sheriff Simmons and recovery on the Sheriff's bond posted on behalf of the Sheriff is therefore proper.

WHEREFORE, Plaintiff Tenicka Shannon, individually and as the personal representative of the estate and heirs of Mr. Frederick R. Smith Cox, respectfully requests that this Court enter judgment against Defendant Hill, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

### Count IV – Wrongful Death – Negligence
*Plaintiff v. Defendant Hill, individually and in his official capacity*

121.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

122.     At all material times, it was the duty of Defendant Hill, individually and as an officer, agent, and/or employee of Defendant DCSO, to use reasonable care to prevent harm or injury to others and to refrain from malicious and willful and wanton conduct which would endanger the safety of others, including Decedent Mr. Fred Cox.

18

123.    Defendant Hill, individually and as an officer, agent, and/or employee of Defendant

DCSO, breached the aforementioned duty by committing one or more of the following

negligent, malicious, and willful and wanton actions:

  a. With utter indifference and conscious disregard for harm or injury, Defendant Hill
     used unreasonable and deadly force on Decedent Mr. Fred Cox under
     circumstances where the Decedent posed no threat or danger either to Defendant
     Hill or to the public, as Mr. Cox was saving the lives of a mother and her young
     son;
  b. With utter indifference and conscious disregard for harm or injury, Defendant Hill
     fired his service weapon while outside DCSO jurisdiction;
  c. With utter indifference and conscious disregard for harm or injury, Defendant Hill
     fired his service weapon toward memorial attendees as they fled inside the Church
     seeking cover and sanctuary during the drive-by shooting;
  d. With utter indifference and conscious disregard for harm or injury, Defendant Hill
     fired his service weapon on the opposite side of the Church as the individuals who
     were committing the drive-by shooting;
  e. With utter indifference and conscious disregard for harm or injury, Defendant Hill
     fired his service weapon toward, and struck, Decedent Mr. Fred Cox as he was
     assisting a mother and child find safety inside the Church.

124.    As a direct and proximate result of the conduct alleged above by Defendant Hill,

individually and as an officer, agent and/or employee of Defendant DCSO, Plaintiff's

Decedent, Mr. Fred Cox, sustained substantial injuries and ultimately expired.

125.    At the time of his death, Mr. Fred Cox, deceased, left next of kin who were

dependent upon the Decedent for their support and have been and will be deprived of

benefits of the Decedent's services, income, support, society, companionship, love and

affection during and for the remainder of their lives.

126.    Also as a direct and proximate result of Defendant Hill's conduct as alleged above,

Mr. Fred Cox's surviving children and next of kin suffered emotional distress and mental

anguish.

WHEREFORE, Plaintiff Tenicka Shannon, individually and as the personal representative of the estate and heirs of Mr. Frederick R. Smith Cox, respectfully requests that this Court enter judgment against Defendant Hill, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

## Count V – Survival – Battery
### *Plaintiff v. Defendant Hill, individually and in his official capacity*

127.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

128.    Defendant Hill, acting under color of state authority as a deputy with DCSO, caused malicious and needless bodily contact with Mr. Fred Cox without his consent that directly and proximately caused his death. The conduct of Defendant Hill was malicious, corrupt, deliberate, and in bad faith.

129.    The conduct of Defendant Hill constituted a battery, and Defendant Hill is liable for all injuries and damages inflicted on Mr. Fred Cox, including compensatory and punitive damages.

130.    The actions described herein were purportedly undertaken within the scope of and pursuant to the duties of Defendant Hill as a deputy and agent of Sheriff Simmons and recovery on the Sheriff's bond posted on behalf of the Sheriff is therefore proper.

WHEREFORE, Plaintiff Tenicka Shannon, individually and as the personal representative of the estate and heirs of Mr. Frederick R. Smith Cox, respectfully requests that this Court enter judgment against Defendant Hill, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

20

## Count VI – Survival – Negligence
### *Plaintiff v. Defendant Hill, individually and in his official capacity*

131.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully

pleaded herein.

132.     At all material times, it was the duty of Defendant Hill, individually and as an

officer, agent, and/or employee of Defendant DCSO, to use reasonable care to prevent

harm or injury to others and to refrain from malicious and willful and wanton conduct

which would endanger the safety of others, including Decedent Mr. Fred Cox.

133.     Defendant Hill, individually and as an officer, agent, and/or employee of Defendant

DCSO, breached the aforementioned duty by committing one or more of the following

negligent, malicious, and willful and wanton actions:

    a.  With utter indifference and conscious disregard for harm or injury, Defendant Hill used unreasonable and deadly force on Decedent Mr. Fred Cox under circumstances where the Decedent posed no threat or danger either to Defendant Hill or to the public, as Mr. Cox was saving the lives of a mother and her young son;

    b.  With utter indifference and conscious disregard for harm or injury, Defendant Hill fired his service weapon while outside DCSO jurisdiction;

    c.  With utter indifference and conscious disregard for harm or injury, Defendant Hill fired his service weapon toward memorial attendees as they fled inside the Church seeking cover and sanctuary during the drive-by shooting;

    d.  With utter indifference and conscious disregard for harm or injury, Defendant Hill fired his service weapon on the opposite side of the Church as the individuals who were committing the drive-by shooting;

    e.  With utter indifference and conscious disregard for harm or injury, Defendant Hill fired his service weapon toward, and struck, Decedent Mr. Fred Cox as he was assisting a mother and child find safety inside the Church.

134.     Prior to his death, Mr. Fred Cox, deceased, as a direct, legal and proximate result

of such negligent acts and/or omissions of Defendant Hill was caused to be injured,

21

experiencing extreme and severe pain and physical and emotional suffering before his death, and sustained damages of a personal and pecuniary nature, and had he lived, Mr. Cox would have been entitled to bring this action and said action has survived him.

135.    As a direct and proximate result of the negligence of Defendant Hill, individually and as an officer, agent and/or employee of Defendant DCSO, the Plaintiff's Decedent, Mr. Fred Cox, suffered survival damages pursuant to N.C. Gen. Stat. § 28A-18-1.

WHEREFORE, Plaintiff Tenicka Shannon, individually and as the personal representative of the estate and heirs of Mr. Frederick R. Smith Cox, respectfully requests that this Court enter judgment against Defendant Hill, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

### Count VII – Action on Bond(s) and N.C. Gen. Stat. § 58-76-1, *et seq.*
### *Plaintiff v. Defendant Travelers Casualty and Surety Company of America*

136.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

137.    As alleged herein, Sheriff of Davidson County, Richie Simmons, neglected the duties of the office, and committed misconduct and misbehavior, by and through deputies under the Sheriff's command, who are agents of the Sheriff, acting within the course and scope of the agency. Sheriff Simmons is liable to the Estate of Frederick R. Smith Cox for all acts done by virtue or under color of the Office of Sheriff of Davidson County and recovery on the Sheriff's bond is therefore proper.

138.    Mr. Fred Cox died as a proximate result of such neglect, misconduct and/or misbehavior of the deputies and agents of Sheriff of Davidson County. Consequently,

Plaintiff, on behalf of the Estate of Frederick R. Smith Cox is entitled to recover from Travelers damages in an amount in excess of $25,000.00.

## **PRAYER**

WHEREFORE, Plaintiff, Tenicka S. Shannon, individually and as Administrator of the Estate of Frederick R. Smith Cox, deceased, respectfully prays the Court for judgment against Defendants, jointly and severally in their individual and official capacities, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1. That Plaintiff have and recover from Defendants, jointly and severally, such amounts as will compensate Plaintiff for the deprivation of Mr. Fred Cox's Constitutional rights and violation of state law as alleged herein, for Mr. Cox's wrongful death;
2. That Plaintiff have and recover such punitive damages, jointly and severally, for the deprivation of Mr. Fred Cox's Constitutional rights and violation of state law, as allowed by law;
3. That Plaintiff have and recover such special damages, jointly and severally, for the deprivation of Mr. Fred Cox's Constitutional rights and violation of state law, as allowed by law;
4. That Plaintiff have and recover costs, expenses, pre-judgment and post-judgment interest and reasonable attorney fees as allowed by 42 U.S.C. § 1988 or other applicable law;
5. That Plaintiff have and recover of Travelers compensatory damages in a sum in excess of $25,000.00;
6. That Plaintiff be **granted a jury trial of all issues raised herein so triable**;
7. That Plaintiff have and recover such other and further amounts of relief as the Court deems just and proper.

Dated: August 11, 2021                         Respectfully Submitted,

**s/**

**MCPHERSON & MILLS, PLLC**
Ashley Mills (NC Bar No. 44608)
Lyndsey McPherson (NC Bar No. 43872)
405 W. Westwood Avenue

23

High Point, NC 27262
ashley@scottlawoffices.net
lyndsey@scottlawoffices.net

**BEN CRUMP LAW, PLLC**
Ben Crump (*pro hac vice pending*)
(Washington, D.C. Bar No. 1552623)
717 D Street N.W., Suite 310
Washington, D.C. 20004
ben@bencrump.com

**ROMANUCCI & BLANDIN, LLC**
Antonio M. Romanucci *(pro hac vice pending)* (Illinois ARDC No. 6190290)
Bhavani Raveendran *(pro hac vice pending)* (Illinois ARDC No. 6309968)
Nicolette Ward, (*pro hac vice pending*) (Illinois ARDC No. 6324818)
Ian Fallon *(pro hac vice pending)* (Illinois ARDC No. 6332303)
321 N. Clark St., Ste. 900
Chicago, IL 60654
Phone: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
b.raveendran@rblaw.net
nward@rblaw.net
ifallon@rblaw.net

*Attorneys for Plaintiff*,
TENICKA S. SHANNON

24